2017R00464/am/lsh

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. William H. Walls |
| v. | : | Criminal Number: 18- 687 |
| MELISSA REYNOLDS,<br>a/k/a "Melissa Shawn Reynolds-Herod,"<br>a/k/a "Melissa James" | : | 18 U.S.C. § 1349 |

I N F O R M A T I O N
(Conspiracy to Commit Mail and Bank Fraud)

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

Introduction

1. At various times relevant to this Information:

The Defendant and Other Parties

    a. Defendant Melissa Reynolds, a/k/a "Melissa Shawn Reynolds-Herod" and "Melissa James" ("Reynolds"), was a resident of Elizabeth, New Jersey.

    b. Co-Conspirator One, an individual not named as a defendant herein, resided with defendant Reynolds in Elizabeth, New Jersey.

    c. Co-Conspirator Two, an individual not named as a defendant herein, was a resident of Hillside, New Jersey.

    d. Co-Conspirator Three, an individual not named as a defendant herein, was a resident of West Orange, New Jersey.

e.  Co-Conspirator Four, an individual not named as a defendant herein, was a resident of Maplewood, New Jersey. In or about March 2013, Co-Conspirator Four leased a 2012 Bentley (the "Bentley"), and a company ("Company One") was assigned the rights under this lease. In or about March 2016, Co-Conspirator Four leased a 2016 Rolls Royce Coupe (the "Rolls Royce"), and a company ("Company Two") provided the financing for the Rolls Royce. In or about March 2015, Co-Conspirator Four leased a 2015 Mercedes-Benz ("MB-1"), and Co-Conspirator Four's family member (the "Family Member") leased a 2015 Mercedes-Benz ("MB-2"). In or about February 2016, Co-Conspirator Four leased a 2016 Mercedes-Benz ("MB-3"). A company ("Company Three") provided the financing for MB-1, MB-2, and MB-3.

f.  Co-Conspirator Five, an individual not named as a defendant herein, was a resident of Newark, New Jersey.

g.  Co-Conspirator Six, an individual not named as a defendant herein, was a resident of Georgia.

The Victim Entities

h.  Financial Institution One was a "financial institution" within the meaning of Title 18, United States Code, Sections 20 and 27. Two mortgage service companies were subsidiaries of Financial Institution One (collectively "Subsidiary One").

i.  Financial Institution Two was a "financial institution" within the meaning of Title 18, United States Code, Sections 20 and 27. A mortgage

service company was a subsidiary of Financial Institution Two ("Subsidiary Two").

  j. Financial Institution Three was a "financial institution" within the meaning of Title 18, United States Code, Sections 20 and 27.

  k. Financial Institution Four was a "financial institution" within the meaning of Title 18, United States Code, Sections 20 and 27.

  l. Financial Institution Five was a credit union and a "financial institution" within the meaning of Title 18, United States Code, Sections 20 and 27.

  m. The United States Department of Education ("ED") was an executive agency of the federal government.

  n. The Federal Housing Administration ("FHA"), U.S. Department of Housing and Urban Development ("HUD") was an executive agency of the federal government.

  o. The United States Department of Treasury was an executive agency of the federal government.

  p. Company One provided financing for the purchase of luxury cars.

  q. Company Two provided financing for the purchase of luxury cars.

  r. Company Three provided financing for the purchase of luxury cars.

s.    The entities described in Paragraph 1h through 1r above are hereinafter collectively the "Victim Entities."

## The Conspiracy

2.    From in or about mid-2014 through in or about mid-2017, in Union and Essex Counties, in the District of New Jersey and elsewhere, defendant

MELISSA REYNOLDS,
a/k/a "Melissa Shawn Reynolds-Herod,"
a/k/a "Melissa James"

knowingly and intentionally conspired and agreed with Co-Conspirator One, Co-Conspirator Two, Co-Conspirator Three, Co-Conspirator Four, Co-Conspirator Five, Co-Conspirator Six, and others to:

a.    devise and intend to devise a scheme and artifice to defraud the Victim Entities, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice to defraud, caused to be placed in a United States post office or other authorized depository for mail matter, items to be delivered by the United States Postal Service according to the directions thereon, and caused to be deposited items to be sent and delivered by private and commercial interstate carriers, contrary to Title 18, United States Code, Section 1341;

b.    devise and intend to devise a scheme and artifice to defraud Financial Institution One, Subsidiary One, Financial Institution Two, Subsidiary

Two, Financial Institution Three, Financial Institution Four, and Financial Institution Five, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice to defraud, caused to be placed in a United States post office or other authorized depository for mail matter, items to be delivered by the United States Postal Service according to the directions thereon, and caused to be deposited items to be sent and delivered by private and commercial interstate carriers, affecting financial institutions, contrary to Title 18, United States Code, Section 1341; and

   c. execute a scheme and artifice to defraud financial institutions, namely, Financial Institution One, Subsidiary One, Financial Institution Two, Subsidiary Two, Financial Institution Three, Financial Institution Four, and Financial Institution Five, and to obtain money, funds, and assets owned by and under the custody and control thereof, by means of false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

## Object of the Conspiracy

3. The object of the conspiracy was to defraud the Victim Entities by fraudulently discharging lawful mortgages, loans, debts, and other financial obligations (the "Debt Elimination Scheme").

## Manner and Means of the Conspiracy

4. It was part of the conspiracy that defendant Reynolds, Co-Conspirator One, and their co-conspirators obtained information from the Victim Entities, including pay off quotes, for their debts and the debts of others.

5. It was further part of the conspiracy that defendant Reynolds and Co-Conspirator One made fictitious money orders, cashier's checks, and other false and fraudulent documents on their home computer. These money orders and cashier's checks falsely purported to be issued or backed by the United States Government.

6. It was further part of the conspiracy that defendant Reynolds, Co-Conspirator One, and their co-conspirators, mailed the fictitious money orders, cashier's checks, and false documents to the Victim Entities for the purpose of advancing the Debt Elimination Scheme.

7. It was further part of the conspiracy that defendant Reynolds, Co-Conspirator One, and certain of their co-conspirators, including Co-Conspirator Four, made and used false statements and documents in state and federal court proceedings to hinder, obstruct, and delay the Victim Entities' ability to enforce lawful mortgages, loans, debts, and other financial obligations owed by defendant Reynolds, Co-Conspirator One, and Co-Conspirator Four.

8. For example:

a. In or about May 2014, defendant Reynolds signed and mailed a fraudulent money order, in the approximate amount of $432,000, to Financial Institution One and Subsidiary One, resulting in the fraudulent discharge of a mortgage on her residential home in Elizabeth New Jersey (the "Elizabeth Residence").

b. In or about May 2014, Co-Conspirator One mailed a fraudulent money order, in the approximate amount of $22,260, to Financial Institution Five as a payment toward Co-Conspirator One's car loan.

c. In or about May 2014, defendant Reynolds mailed a fraudulent money order, in the approximate amount of $39,585, to Financial Institution Five as payment toward her car loan.

d. On or about July 29, 2014, Co-Conspirator Three mailed a fraudulent money order, in the approximate amount of $245,330, to Financial Institution Three to fraudulently discharge the mortgage on Co-Conspirator Three's residential home in West Orange, New Jersey (the "West Orange Residence").

e. In or about July 2014, after defaulting on an FHA backed mortgage for a residential property in Newark, New Jersey (the "Newark Residence"), defendant Reynolds signed and mailed a fraudulent money order, in the amount of $92,329.89, to a collection company acting on behalf of HUD.

      f.      On or about July 29, 2014, defendant Reynolds signed and mailed a fraudulent money order, in the approximate amount of $252,000, to Financial Institution Two to fraudulently discharge the mortgage on the Newark Residence.

      g.      On or about July 29, 2014, defendant Reynolds signed and mailed a fraudulent money order, in the amount of $60,000, to a collection company acting on behalf of ED to fraudulently payoff her student loans.

      h.      On or about May 27, 2016, Co-Conspirator Two mailed a fraudulent money order, in the approximate amount of $305,000, to Financial Institution Three to fraudulently discharge the mortgage on Co-Conspirator Two's residential home in Hillside, New Jersey (the "Hillside Residence").

      i.      On or about June 8, 2016, Co-Conspirator Two mailed a fraudulent money order, in the approximate amount of $92,393, to a collection company acting on behalf of HUD to pay off the FHA portion of the mortgage on the Hillside Residence.

      j.      On or about June 12, 2016, defendant Reynolds mailed a fraudulent money order, in the approximate amount of $220,000, to Financial Institution Four to fraudulently discharge a mortgage on a residential home in Bowie, Maryland (the "Maryland Residence").

      k.      On or about June 20, 2016, Co-Conspirator Two mailed a fraudulent money order, in the approximate amount of $305,000, to Financial

Institution Three to fraudulently discharge the FHA backed mortgage on the Hillside Residence.

  l. On or about June 20, 2016, Co-Conspirator Three mailed a fraudulent money order, in the approximate amount of $230,000, to Financial Institution Three to fraudulently discharge the mortgage on the West Orange Residence.

  m. On or about June 17, 2016, defendant Reynolds mailed a fraudulent money order, in the approximate amount of $252,000, to Subsidiary Two to fraudulently discharge the mortgage on the Newark Residence.

  n. On or about January 21, 2017, defendant Reynolds mailed a fraudulent money order, in the approximate amount of $53,000, to a collection company acting on behalf of ED to fraudulently payoff her student loans.

  o. In or about February 2017, defendant Reynolds and Co-Conspirator One filed a document in the District Court of New Jersey, falsely representing that they had paid approximately $504,000 to Financial Institution Two in 2014 and owed $0 on the mortgage for the Newark Residence.

  p. In or about February 2017, Co-Conspirator Four gave payoff quotes related to leases for the Bentley, MB-1, MB-3, and the mortgage on the Family Member's residence in Maplewood, New Jersey to defendant Reynolds and Co-Conspirator One.

  q. On or about February 2, 2017, defendant Reynolds made a fraudulent cashier's check, in the approximate amount of $225,000, and payable

to Financial Institution Three to fraudulently discharge Co-Conspirator Three's mortgage on the West Orange Residence.

r.  On or about February 2, 2017, defendant Reynolds mailed a fraudulent cashier's check, in the approximate amount of $226,000, to Financial Institution Four to fraudulently discharge a mortgage on the Maryland Residence.

s.  On or about February 2, 2017, defendant Reynolds mailed a fraudulent money order, in the approximate amount of $14,000, to a collection company acting on behalf of ED to fraudulently payoff her student loans.

t.  On or about February 23, 2017, defendant Reynolds mailed a fraudulent money order, in the approximate amount of $67,000, to a collection company acting on behalf of ED to fraudulently payoff her student loans.

u.  On or about February 27, 2017, defendant Reynolds signed a fraudulent cashier's check, payable to Company Three and in the approximate amount of $51,000, as a payment of the lease for Co-Conspirator Four's MB-1. Thereafter, this fraudulent cashier's check was mailed to Company Three.

v.  On or about February 27, 2017, defendant Reynolds signed a fraudulent cashier's check, payable to Company One and in the approximate amount of $101,000, as a payment of the lease for Co-Conspirator Four's Bentley. Thereafter, this fraudulent cashier's check was mailed to Company One. Although fraudulent, Company One accepted this cashier's check as a

payoff of the Bentley and mailed the title to the car, via Federal Express, to Co-Conspirator Four.

    w.    On or about February 27, 2017, defendant Reynolds signed a fraudulent cashier's check, payable to Company Two and in the approximate amount of $300,000, as payment of the lease for Co-Conspirator Four's Rolls Royce. Thereafter, this fraudulent cashier's check was mailed to Company Two.

    x.    On or about February 27, 2017, Co-Conspirator One made and signed another fraudulent cashier's check, payable to Company Two and in the approximate amount of $300,000, as a second payment of the lease for Co-Conspirator Four's Rolls Royce. Thereafter, in or about early April 2017, this fraudulent cashier's check was mailed to Company Two.

    y.    In or about March 2017, Co-Conspirator Four fraudulently obtained title to MB-1.

    z.    In or about March 2017, defendant Reynolds mailed a fraudulent cashier's check, in the approximate amount of $350,000, to Subsidiary Two to fraudulently discharge the mortgage on the Newark Residence.

    aa.    In or about March 2017, defendant Reynolds mailed a second fraudulent cashier's check, in the approximate amount of $350,000, to Subsidiary Two to fraudulently discharge the mortgage on the Newark Residence.

bb.  On or about March 9, 2017, a fraudulent cashier's check, payable to Company Three and in the approximate amount of $50,000, was mailed to Company Three as payment of the lease of Co-Conspirator Four's MB-3.

cc.  On or about March 10, 2017, Company Three mailed a letter to Co-Conspirator Four, advising him that the $51,000 payment, which payment resulted in him receiving title to MB-1, was returned unpaid by the bank. In this letter, Company Three advised Co-Conspirator Four that he owed approximately $51,063, the full balance of the lease, and it was a "serious matter."

dd.  On or after March 10, 2017, Co-Conspirator Four gave a copy of the letter from Company Three to defendant Reynolds and Co-Conspirator One.

ee.  On or about March 13, 2017, defendant Reynolds filed a fabricated letter, purportedly issued by Subsidiary One, in the District Court of New Jersey, which letter falsely asserted that the mortgage on the Elizabeth Residence had been paid in full.

ff.  On or about March 20, 2017, defendant Reynolds mailed a fraudulent money order, in the approximate amount of $67,000, to a collection company acting on behalf of ED to fraudulently payoff her student loans.

gg.  In or about May 2017, defendant Reynolds mailed a third fraudulent cashier's check, in the approximate amount of $350,000, to Subsidiary Two to fraudulently discharge the mortgage on the Newark Residence.

hh. On or about March 21, 2017, Co-Conspirator Four entered into a contract to sell the Bentley to a third party for approximately $82,000, the title of which car he obtained through fraud.

ii. On or about March 28, 2017, Co-Conspirator Four sold the Bentley to a third party for approximately $82,000.

jj. On or about March 30, 2017, Co-Conspirator Four gave a genuine cashier's check, in the approximate amount of $25,000, to Co-Conspirator One.

kk. On or about April 6, 2017, defendant Reynolds deposited this $25,000 genuine cashier's check into Co-Conspirator Two's bank account.

ll. On or about June 19, 2017, Co-Conspirator Two mailed a fraudulent cashier's check, in the approximate amount of $322,000, to Financial Institution Three to fraudulently discharge the FHA backed mortgage on the Hillside Residence.

mm. On or about June 21, 2017, defendant Reynolds signed a fraudulent cashier's check, payable to Company Three and in the approximate amount of $38,000, as payment of the lease for the Family Member's MB-2. Thereafter, this fraudulent cashier's check was mailed to Company Three.

nn. On or about June 21, 2017, defendant Reynolds signed a fraudulent cashier's check, payable to Company Three and in the approximate amount of $116,000, as payment of the lease of Co-Conspirator Four's MB-3. Thereafter, this fraudulent cashier's check was mailed to Company Three.

oo. In or about late July 2017, Co-Conspirator Four filed a lawsuit in federal court in the District of New Jersey, wherein he falsely asserted that he had paid off the Bentley in full with certified funds on or about February 27, 2017, namely, the fraudulent $101,000 cashier's check signed by defendant Reynolds.

All in violation of Title 18, United States Code, Section 1349.

## Forfeiture Allegation

1.  As the result of committing the offense constituting specified unlawful activity, as defined in Title 18, United States Code, Section 1956(c)(7), as alleged in this Information, defendant

MELISSA REYNOLDS,<br>
a/k/a "Melissa Shawn Reynolds-Herod,"<br>
a/k/a "Melissa James"

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the mail fraud conspiracy, and all property traceable thereto, including, but not limited to, a sum of money equal to at least $548,242 in United States currency.

## Substitute Assets Provision

2.  If any of the above-described forfeitable property, as a result of any act or omission of defendant Reynolds:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of defendant Reynolds up to the value of the above forfeitable property.

_____
CRAIG CARPENITO
United States Attorney

CASE NUMBER: _____

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

MELISSA REYNOLDS,
a/k/a "Melissa Shawn Reynolds-Herod,"
a/k/a "Melissa James"

# INFORMATION FOR

Title 18, United States Code, Section 1349

CRAIG CARPENITO
U.S. ATTORNEY
NEWARK, NEW JERSEY

ANTHONY MOSCATO
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
973-645-2752