<u>Not for Publication</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      *Plaintiff*,<br><br>   v.<br><br>MELISSA REYNOLDS,<br><br>      *Defendant*. | Crim. No. 18-687<br><br><u>**OPINION & ORDER**</u> |

**<u>John Michael Vazquez, U.S.D.J.</u>**

This matter comes before the Court by way of Defendant Melissa Reynolds' motion to reduce her restitution amount. D.E. 118. Defendant also filed two supplements, D.E. 124, 127, seeking additional reductions to her restitution. The Government filed opposition. D.E. 123, 132. Defendant also filed a motion to remove the Treasury's offset program for her restitution, D.E. 128, which the Government opposes, D.E. 135. The Court reviewed the parties' submissions and considered the motions without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). For the following reasons, Defendant's motions are denied.

### I.   BACKGROUND

#### A.  Underlying Criminal Proceedings

On November 14, 2018, Reynolds pled guilty to a one-count Information charging her with a mail and bank fraud conspiracy, in violation of 18 U.S.C. § 1349, from mid-2014 through mid-2017. D.E. 87, 89. The charge referred to six co-conspirators and eleven victim entities. D.E. 87. The aim of Defendant's crime was to engage in a fraudulent debt elimination scheme; the lawful debts included mortgages, car payments, and credit card bills. PSR ¶ 25. Reynolds engaged in

criminal activity with numerous others, including her significant other, Germaine King. *Id.* Defendant used fraudulent money orders and cashier checks to accomplish her scheme. *Id.* ¶¶ 27, 30. When the fraudulent payments were rejected, Defendant and King engaged in harassment, obstruction, and delay, in an attempt to rebuff the lenders' attempts to collect the lawful debts. *Id.* ¶ 28.

The following is a short overview of the many frauds in which Defendant and others engaged. First, as to the Municipal Credit Union of New York City ("MCU"), Reynolds bought a luxury car in 2012 with a $51,656 loan from MCU. *Id.* ¶ 32. Defendant twice attempted to pay off the loan with fraudulent money orders (and fraudulent receipts), was twice rejected, and then stopped paying the loan. *Id.* ¶¶ 35-36.

Second, as to a residence in Elizabeth, New Jersey, Reynolds obtained a mortgage in the amount of $417,000 from New Penn Financial LLC ("New Penn") in March 2013. *Id.* ¶ 37. Shortly after the mortgage was issued, Reynolds deeded to King a 50% interest in the property and stopped paying the monthly mortgage payments. *Id.* On May 15, 2014, Reynolds and King mailed a $432,000 fraudulent money order to Shellpoint Partners ("Shellpoint") along with a letter falsely stating that the mortgage had been paid in full. *Id.* ¶ 38. Shellpoint sent the fraudulent money order to Resurgent Capital Services ("Resurgent"), a mortgage service company used by New Penn/Shellpoint. *Id.* ¶ 39. Although the fraudulent money order was rejected, Resurgent mistakenly credited the account and discharged the mortgage. *Id.* Resurgent then filed suit in New Jersey state court, seeking to reinstate the mortgage. *Id.* ¶ 40. Relatedly, Reynolds filed documents with the IRS indicating that she had given the state judge a $450,000 loan, that the judge was personally liable for the loan, and that the docket number in the Resurgent case was actually a loan account number. *Id.* ¶ 41. In January 2017, Reynolds and King also filed a lawsuit

in federal court seeking to remove the Resurgent matter to federal court. *Id.* ¶ 42. In support, the duo submitted a copy of the sham money order receipt and a fictitious letter reflecting that Resurgent said that the loan had been paid in full. *Id.* Reynolds and King sought $90,000,000.00 in damages. *Id.* In November 2017, the state court reinstated the mortgage and found that Reynolds and King had committed fraud on the court. *Id.* ¶ 43.

Reynolds' other frauds included using fraudulent money orders and cashier's checks (along with submitting false information to the IRS) in an effort to discharge a $314,204 mortgage on a Newark residence, *Id.* ¶¶ 49-55; and similar actions as to residences in Hillside, West Orange, and Maryland, *Id.* ¶¶ 55-72. Reynolds also used fraudulent money orders and/or cashier's checks in an effort to pay off her student debt, as well as other luxury vehicles, *Id.* ¶¶ 73-91. As to luxury vehicles, Reynolds and her co-conspirators were successful in defrauding Bentley Financial Services of more than $90,000. *Id.* ¶ 86. When Bentley sued a co-conspirator in July 2017 because of the fraud, Reynolds helped the co-conspirator improperly remove the case to federal court. *Id.* ¶ 91. Reynolds and her confederates were arrested on March 20, 2018. *Id.* ¶ 99.

On December 18, 2019, the Court sentenced Defendant to one year and one day in prison. D.E. 98. The sentence was far lower than the United States Sentencing Guidelines' range of 51-63 months, *id.* ¶ 170, because of the Government's motion for a reduced sentence based on substantial assistance.

Reynolds pled guilty pursuant to a plea agreement dated August 22, 2018. D.E. 91. As part of the agreement, Defendant agreed to pay restitution to Resurgent in the amount of $417,276; Porsche Financial Services (Bentley) in the amount $93,235.29; and MCU in the amount of $37,730.72 for a total of $548,242.101. *Id.* at 3. Probation later determined a higher amount,

$587,080.  *Id.* ¶ 108.  The Court ordered restitution in the amount calculated by Probation.  D.E. 98.

### B.  The Parties' Arguments

Reynolds' initial motion asks for a reduction as to the amount to be paid to MCU.  D.E. 118.  She asserts that when she pled guilty, the amount owed was only $14,647 and that the debt was later paid off.  *Id.* at 1.  This position was later reiterated by Defendant in a separate filing. D.E. 127.  Reynolds' next motion addresses the amount owed to Shellpoint ($432,000), apparently arguing that she also has to pay Resurgent $417,000 for the same loan.  D.E. 124 at 7.

As to the MCU amounts, the Government indicates that the Court does not have authority to grant the relief.  The Government continues that the proper remedy is to credit Defendant for any amounts that she paid to MCU (and/or its insurer, State National) upon receipt of appropriate documentation from MCU and its insurer.  D.E. 123.  In fact, the Government states that "upon receipt of the requested documentation from MCU and State National directly from those parties, the United States will provide the Clerk's Office with proof of payments to ensure that those payments are credited."  *Id.* at 4.

Reynolds also moves to be removed "from the Treasury Offset Program to satisfy the restitution and forfeiture[.]"  D.E. 128.  Reynolds appears to indicate that she received a tax refund in October 2021, which was applied to restitution, and that she qualifies for a stimulus check that may be subject to the offset program.  *Id.* at 2.  Defendant also asks that any child credit or future refund not be used to pay down her restitution.  *Id.*  Reynolds explains she suffered over $100,000 in damages to her home, car, and personal belongings due to Hurricane Ida.  *Id.*  She adds that she faces additional hardship because King is currently incarcerated due to his activity in the fraudulent schemes.  *Id.*

4

In opposition, the Government asserts that the CARES Act does not exempt its payments from garnishment in furtherance of restitution under the Mandatory Restitution to Victims of Certain Crimes Act ("MRVA"), 18 U.S.C. § 3663A.  D.E. 135 at 3.  The Government continues that 18 U.S.C. § 3613(a) permits the enforcement of a restitution order notwithstanding any other federal law with certain enumerated exceptions not applicable here.  *Id.*

## II.   ANALYSIS

The Court is not aware of legal authority permitting it to grant the relief requested by Defendant.  As the Government correctly notes, the MRVCA provides in relevant part that "[n]otwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense[.]"  18 U.S.C. § 3663A(a)(1).  Defendant's crime is clearly covered by Section 3663A(c)(1)(A)(ii).  The procedures for the issuance and enforcement of an order of restitution are governed by 18 U.S.C. § 3664.  The only potentially relevant provision that the Court can discern reads as follows:

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution.  The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim.  The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances.  Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

18 U.S.C. § 3663(k).  Here, Defendant indicates that her financial circumstances have changed due to damage suffered by Hurricane Ida.  Defendant provides no corroboration of her claim, and given her criminal conduct, the Court will not rely on any such representations absent independent

corroboration by a credible third-party or source.  However, even if the Court did credit Defendant's assertion, Defendant does not ask the Court to adjust her payment schedule, which is currently $200 per month.  D.E. 98 at 6.  Similarly, Defendant does not point the Court to any authority that it has to order the IRS to cease collections pursuant to the Treasury Offset Program.

Moreover, as to the MCU payments, the Government has agreed that once it receives appropriate documentation from MCU or its insurer, it will notify the Clerk's Office to reduce the restitution amount by an appropriate amount.  Finally, as to the restitution for the mortgage, the Court does not understand Defendant's argument.  Defendant complains about a *lis pendens* on the property.  D.E. 124 at 4.  But the *lis pendens* was put in place before the mortgage was reinstated and done to provide appropriate notice that the property was subject to litigation. Reynolds does not indicate that she had any obligation to pay additional amounts due to the *lis pendens*.  More importantly, Defendant provides no proof that she has been paying both the mortgage and the restitution.

III.    **CONCLUSION**

For the foregoing reasons, and for good cause shown

It is on this 10th day of December 2021 hereby

**ORDERED** that Defendant's motions to reduce her restitution amount.  D.E. 118, 124, 127, are **DENIED**; and it is further

**ORDERED** that Defendant's motion to prohibit the Treasury's offset program from applying to her restitution and forfeiture, D.E. 128, is **DENIED**; and it is further

**ORDERED** that the Clerk's Office shall serve a copy of this Opinion & Order on Defendant by regular mail and certified mail return receipt.

John Michael Vazquez, U.S.D.J.

6